STATE of Missouri, Respondent,

v.

Billy McKINNEY, Appellant.

No. KCD 28883.

Missouri Court of Appeals,
Kansas City District.

June 27, 1977.

Motion for Rehearing and/or Transfer
Denied Aug. 5, 1977.

Application to Transfer Denied
Sept. 12, 1977.

Joe Hamilton Scott, Public Defender, St. Joseph, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and PRITCH-ARD, C. J., and DIXON, J.

PRITCHARD, Chief Judge.

By a verdict of a jury appellant was convicted of the commission of the crime of burglary in the second degree. Upon a finding that appellant was a second offender, the court sentenced him to five years in the Department of Corrections.

Two points are presented. The first is that the trial court committed error in refusing to permit appellant to argue to the jury that it could draw an unfavorable inference from the state's failure to produce evidence of matching pry marks on victim Danny Paradise's door with a knife taken from appellant, or otherwise connecting the knife with the burglary; and to argue the same inference as to the state's failure to produce evidence of appellant's fingerprints inside the Paradise home. The second point is that the court erred in admitting into evidence State's Exhibit 6, the knife taken from appellant on his arrest (acknowledged by him to the arresting officer to belong to appellant) because there was no foundation laid; there was no evidence showing the knife's role in the burglary; it was irrelevant; and was highly prejudicial.

The sufficiency of the evidence to sustain the conviction is not challenged. With respect to the points presented, on December 9, 1975, Danny Paradise, prior to leaving for work, checked the rear door of his residence and found it locked. He locked the front door and left. At about 6:25 p.m., Paradise took a break from work to pick up his wife and son, and on the way he passed his home and noticed that the front door was partially open, and as he pulled to the curb he saw someone sticking his head out of the front door. Paradise got a disassembled pistol from his glove compartment, assembled it and went toward the house. He then saw two men run from the residence. One of them, appellant, whom Paradise identified in court, escaped by jumping a railing and the other ran into the house where he was apprehended by Paradise. He called the police, and when they arrived they found a hasp had been pried from the front door

which had been forced open. Contents of the house were in disarray.

Richard Brown investigated the burglary and identified photographs of the scene of the crime showing the broken door hasp and the disarray of the interior of the home. The photograph of the door, which was before the jury, showed it had been pried away from the door facing, and the other end, with a padlock, was still attached to the door, and was hanging down. Brown arrested appellant about 3 hours later and found upon him the knife which appellant then said belonged to him. The knife which is before this court and was before the jury has a blade 4¼ inches long which folds into its handle. Its blade tip is bent and scarred about one inch back, with a greater bend about ½ inch from the point of the blade. Brown testified that the knife was in that condition when it was handed to him by appellant, but no other evidence with regard to the knife's role in the burglary was offered.

■ Appellant relies upon such cases as *State v. Johnson*, 536 S.W.2d 851, 856 (Mo.App.1976); *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 648 (1942); *State v. Denmon*, 473 S.W.2d 741, 745 (Mo.1971); and *Adam Hat Stores v. Kansas City*, 307 S.W.2d 36 (Mo.App.1957), to support his argument that he was entitled to argue an unfavorable inference to the jury of the missing evidence of matching pry marks on the door and the lack of evidence of appellant's fingerprints. The cited cases are representative of the well-established rule that one may argue that testimony of an *uncalled* witness, who is not equally available to the parties, would be unfavorable. Brown, however, was a witness, and appellant had ample opportunity to develop from him the facts, or lack of facts, concerning the pry marks and fingerprints. *State v. Dethrow*, 510 S.W.2d 207, 210[4] (Mo.App. 1974), and cases cited. Brown was thus equally available to both parties at trial. There is no evidence that the pry marks were not matched with the knife blade, or that no attempt was made to secure evidence of fingerprints. What counsel was

attempting to do was to argue matters not in evidence which is impermissible. *State v. Cuckovich*, 485 S.W.2d 16, 27 (Mo.banc 1972), under this record—where there was no showing, either positively or negatively, that it existed, or that it was suppressed by the state. Cf. 31A C.J.S. Evidence § 156(1), p. 391; and note *State v. Swing*, 391 S.W.2d 262, 265 (Mo.1965), where it was said, "And while counsel may have a wide latitude in commenting on the fact that certain evidence is not offered, it is indeed improper to 'charge the adverse party with the suppression and concealment of evidence unless such charge is supported by the evidence.' 88 C.J.S. Trial § 184, p. 361." Furthermore, "It is not incumbent on the State to search for fingerprints and it is not error to refuse to let defendant comment on the absence of such evidence. *State v. Terry*, 472 S.W.2d 426 (Mo.banc 1971) [8]." *State v. Wiggley*, 515 S.W.2d 791, 792[2, 3] (Mo.App.1974). By analogy, under this authority, it was not encumbent upon the state to match the knife blade with the pry marks. Point I is overruled.

■ As noted, the evidence was that the hasp on Paradise's front door was pried off. The knife found on appellant's person had a bent, scarred blade. It is a reasonable inference for the jury to draw that it might have been used to pry the hasp. Before evidence can be excluded as irrelevant, it must appear to be so beyond a doubt. *State v. Dethrow*, 510 S.W.2d 207, 210[4] (Mo.App.1974). The evidence is "relevant to show that the accused owned, possessed or had access to tools, implements, or any other articles with which the particular crime was or might have been committed, and that he owned or had such weapons in his possession prior to or shortly after the commission of the crime * * *." *State v. Stancliff*, 467 S.W.2d 26, 30[1] (Mo.1971). See also *State v. Taylor*, 506 S.W.2d 94, 95[1–3] (Mo.App.1974). The identification of a weapon allegedly used in committing a crime need not be wholly unqualified in order to make the instrument itself admissible as to the weight to be accorded the identification by the jury. *State v. John-*

*son,* 286 S.W.2d 787, 791[3, 4] (Mo.1956). The fact that the introduction into evidence of the knife might have been prejudical to appellant does not cause it to have been inadmissible, it being competent and relevant evidence. *State v. Mullen,* 528 S.W.2d 517, 523 (Mo.App.1975).

Here, the matter of the introduction of the knife was discussed with the trial court before trial, and the state stipulated that the fact that the knife was a concealed weapon would not be mentioned. No evidence of another crime, as contended, was in this case. Compare *State v. Holmes,* 389 S.W.2d 30, 33 (Mo.1965). Point II is overruled.

The judgment is affirmed.

All concur.